UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DREW O. EICHE,<br><br>           Plaintiff,<br><br>   v.<br><br>MICHAEL ASTRUE, Commissioner of Social Security Administration,<br><br>           Defendant. | CASE NO.   **C07-5447RJB**<br><br>REPORT AND RECOMMENDATION<br><br>Noted for May 16, 2008 |

This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976). This matter has been briefed, and after reviewing the record, the undersigned recommends that the Court remand the matter to the administration for further consideration.

## INTRODUCTION

Plaintiff, Drew Eiche, was born in 1971. Mr. Eiche dropped out of high school in the 10th grade and completed a G.E.D. program in 2003. Mr. Eiche is matted with children. He has substantial work experience in the logging industry. He was injured on May 10, 2000, while working on a steep slope, resulting in a dislocated left shoulder and ribs. During rehabilitation and retraining, Plaintiff was involved in a motor vehicle accident. The accident caused further injury, or at least exacerbated his previous injuries.

Mr. Eiche filed an application for a period of disability and social security disability on December 11, 2003, wherein he alleged disability on February 15, 2001 (Tr. 39- 40 & 55-58). He alleges disability based on combined impairments, the most critical of which are degenerative disc disease of the thoracic and lumbar spines; disc protrusion at C6-7; major depressive disorder, chronic, severe and without

REPORT AND RECOMMENDATION
Page - 1

1 psychotic features; attention deficit hyperactivity disorder; left should pain, status post arthroscopy and
2 arthroscopic Bankart repair; pain in his ribs, status post rib dislocation; right arm tendonitis; social
3 anxiety disorder; chronic pain syndrome; and right carpal tunnel syndrome.  His application was denied at
4 the initial determination and reconsideration stages (Tr. 48-49 & 52-54). Mr. Eiche thereafter filed a
5 Request for Hearing (Tr. 41-42). A hearing was held before an administrative law judge on September 13,
6 2006 (Tr. 1082-1124).The ALJ issued a decision on November 14, 2006, denying plaintiff's claim (Tr.
7 13-25).  Plaintiff appealed the decision to the Appeals Council, and an Order denying review of the
8 decision of the ALJ was issued on June 29, 2007, making the ALJ's decision the administration's final
9 determination (Tr. 5-7).

10 Plaintiff filed his Complaint with the Court challenging the denial of his applications for benefits
11 on August 23, 2007.  Specifically, Plaintiff contends: (1) the ALJ improperly rejected the opinion of
12 Plaintiff's treating physician, Dr. Harpole; (2) the ALJ improperly rejected the opinion of examining
13 physician, Dr. Reuther; (3) the ALJ improperly rejected the opinions of two non-examining physicians,
14 Dr. Gregg and Dr. Clifford; (4) the ALJ improperly rejected the lay evidence; (5) the ALJ improperly
15 rejected Plaintiff's testimony; and (5) the ALJ improperly found that jobs exist in significant number in
16 the national economy that Plaintiff could perform.  Defendant counter-argues that the ALJ applied the
17 proper legal standards and that the administrative findings and conclusions were properly supported by
18 substantial evidence.

19 After reviewing the record, the undersigned finds the ALJ failed to properly considered the
20 medical evidence, and therefore, the matter should be remanded to the administration to reconsider the
21 medical evidence.  In addition, because of the failure to properly consider the medical opinion evidence,
22 the administration should also reconsider Plaintiff's testimony, lay evidence, and the vocational evidence
23 and findings.

## DISCUSSION

25 This Court must uphold the determination that plaintiff is not disabled if the ALJ applied the
26 proper legal standard and there is substantial evidence in the record as a whole to support the decision.
27 Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence
28 as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S.

389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance.  Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991).  If the evidence admits of more than one rational interpretation, the Court must uphold the Secretary's decision.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

The ALJ is entitled to resolve conflicts in the medical evidence.  Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987).  He may not, however, substitute his own opinion for that of qualified medical experts.  Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982).  If a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so.  Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). " The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1996).  In Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of a treating physician's opinion because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the ALJ relied on laboratory test results, contrary reports from examining physicians and on testimony from the claimant that conflicted with the treating physician's opinion.

Here, plaintiff contends the ALJ improperly evaluated the opinions provided by Dr. Harpole, Dr. Ruether, Dr. Gregg, and Dr. Clifford.  Each of these opinions is discussed below.

On June 17, 2003, Mr. Eiche's treating physician, Dr. Harpole, opined Mr. Eiche was able to do computer work as long as he is seated with feet on the ground, keyboard and mouse at or below seated elbow height and close enough to body so elbows are at their side, and monitor at eye level. Dr. Harpole restricted this work to no sitting for longer than 1 hour at a time without being able to walk/stand for 15-30 minutes before sitting again and Mr. Eiche should not sit for more than 2-3 hours total/day. When sitting must take 30-60 second stretch break every 15 minutes (Tr. 206).  These work restrictions are significantly greter than those assigned by the ALJ, who found that Mr. Eiche retained the ability to sit for six hours in an eight-hour workday, with the need to shift positions in order to stretch for several minutes every hour (Tr. 21).  The ALJ failed to address the treating physician's opinion, specifically, Dr.

Harpole's assignment of exertional limitations.

The ALJ address the opinion of Dr. Ruether in his written decision (Tr. 21). At the request of the Disability Determination Service (DDS), Dr. Reuther, a psychiatrist, examined Mr. Eiche in April 2004 (Tr. 694-699). Dr. Reuther diagnosed major depressive disorder, chronic, severe, without psychotic features; alcohol abuse in sustained full Remission; attention deficit hyperactivity disorder primarily inattentive type. He assessed Mr. Eiche's GAF score at 45 (Tr. 698). A GAF score at 45 indicates serious symptoms or serious impairment in social, occupational, or school functioning (e.g. no friends, unable to keep a job). The ALJ gave "little value" to Dr. Reuther's assessment, explaining that the opinion was inconsistent with Plaintiff's limited work activities in 2006, Plaintiff's completion of a vocational rehabilitation program, and Plaintiff's activities of daily living (Tr. 21).

After reviewing the record, the undersigned does not find the ALJ's reasons for rejecting Dr. Reuther's assessment legitimate. For instance, in 2006, Mr. Eiche worked between 8 and 20 hours per week delivering cars (Tr. 1089). He only worked from February to July, and the job required him to drive cars to cities in Washington and then ride back to Longview in a van (Tr. 1089-1090). Ninety percent of the time he rode in the van while laying down to relieve some of his pain and discomfort. Furthermore, the time he spent driving was broken up by a breaks every 30 to 45 minutes (Tr. 1094).

Next, the ALJ rejected Dr. Reuther's opinion stating Mr. Eiche successfully completed a rehabilitation program (Tr. 21). However, the program's Manager believed Mr. Eiche was qualified for the entry level position of General Office Clerk only "if" he were allowed to work around his pain levels (Tr. 139). She further reported that she did not believe Mr. Eiche would tolerate the physical demands of the job (Tr. 137). In addition, she stated, "Because of his low tolerance and stamina it will be very difficult for Drew to find employment that will allow him to take time out when his pain increases" (Tr. 139). She also reported he missed one or two days per month of training (Tr. 140). His instructor at the program reported that after four hours Plaintiff was usually in a lot of pain. She requested limiting Plaintiff's office time to four hours and to allow him to study at home for four hours (Tr. 161), which helped him complete the program.

Finally, Dr. Gregg and Dr. Clifford, both DDS state agency non-examining psychologists, opined Mr. Eiche had the following mental residual capacity. The doctors opined Mr. Eiche is moderately

limited in his ability to understand and remember detailed instructions; moderately limited in his ability to carry out detailed instructions; moderately limited in his ability to maintain attention and concentration for extended periods; moderately limited in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; moderately limited in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; moderately limited in his ability to interact appropriately with the general public; moderately limited in his ability to respond appropriately to changes in the work setting; and moderately limited in his ability to set realistic goals or make plans independently of others (Tr. 713-716).

The ALJ accepted the opinions of Drs. Gregg and Dr. Clifford, however, the ALJ failed to include all of the limitations assessed by them in his RFC finding. The ALJ's only mental RFC finding was for "simple work". This finding takes into account the moderate limitations on performing detailed work, but ignores the rest of the opinion. For instance, the doctors opined he is moderately limited in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances and moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 212). The ALJ failed to provide any reasons for not including the moderate limitations assigned by Dr. Gregg and Dr. Clifford.

## CONCLUSION

Based on the foregoing discussion, the Court should remand the matter to the administration for further consideration. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **May 16, 2008**, as noted in the caption.

DATED this 22nd day of April, 2008.

                                                 */s/ J. Kelley Arnold*
                                                 J. Kelley Arnold
                                                 U.S. Magistrate Judge